*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

MEGHAN MARIE KUEBLER, also known as
MEGHAN MARIE O'NEIL,

      Plaintiff-Appellant,

v

PAUL ANDREW KUEBLER,

      Defendant-Appellee.

UNPUBLISHED
October 16, 2025
2:33 PM

No. 374073
Washtenaw Circuit Court
Family Division
LC No. 15-002753-DM

---

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

PER CURIAM.

In this child-custody dispute, plaintiff appeals by right the trial court's denial of her motion to modify custody of the parties' minor children, BK and SK, from the sole legal custody of defendant to joint legal custody. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This is the parties' *fourteenth* appeal in this Court. The underlying facts and protracted legal history of this case are set forth in this Court's opinion in *Kuebler v Kuebler*, 346 Mich App 633, 643-652; 13 NW3d 339 (2023), which the parties do not contest. We rely on those facts and briefly highlight the pertinent ones herein. As this Court summarized,

> The parties have two children together: BK and SK. Plaintiff filed for divorce in November 2015. Eventually, pursuant to a consent judgment of divorce entered on April 21, 2017, defendant received sole physical and legal custody of the children, and plaintiff received supervised parenting time at Catholic Social Services. The reasons for the supervised parenting time were plaintiff's mental-health problems involving manipulation and alienating behavior, such as fabricated ideas of child abuse. [*Id*. at 643, quoting *Kuebler v Kuebler*, unpublished per curiam opinion of the Court of Appeals, issued November 18, 2021 (Docket Nos. 354327, 355934, 356641, and 356709), p 2.]

-1-

Following entry of the consent judgment of divorce, plaintiff moved for unsupervised parenting time and a substantial increase in parenting time, after which the parties engaged in nearly three years of litigation. *Kuebler*, 346 Mich App at 645-646. The trial court ultimately denied plaintiff's motion, which this Court affirmed. *Kuebler*, unpub op at 1-2.

Then, "in January 2021, the case was reassigned to Judge Tracy E. Van den Bergh. In March 2021, while appeals in this Court remained pending, plaintiff again moved the trial court to modify custody and parenting time, seeking joint legal and joint physical custody of the children." *Kuebler*, 346 Mich App at 647. The trial court eventually held an evidentiary hearing, which took place over several days. *Id*. at 649. In November 2021, while the hearing was ongoing, the trial court entered a stipulated interim order that increased plaintiff's parenting time "to a total of five overnights in a 14-day period" while "defendant retained sole legal custody." *Id*. "By the time the trial court held an evidentiary hearing in this case, plaintiff was requesting joint legal and physical custody with a 50-50 split of parenting time." *Id*. at 650. The trial court issued its opinion and order modifying custody and parenting time in July 2022, *id*. at 651, which "changed custody from sole legal custody to joint legal custody and awarded the parties joint physical custody," awarded plaintiff "five overnights in a 14-day period during the school year," and "increased plaintiff's parenting time to include a 50-50 split of parenting time during the summers," *id*. at 652.

*Kuebler* involved defendant's appeal of the trial court's July 2022 opinion and order, which this Court vacated based on several evidentiary, legal, and factual issues. *Id*. at 652-696. Of note to this appeal, the *Kuebler* Court concluded that because "the children have an established custodial environment with both parties, the trial court committed a clear legal error on a major issue by applying the lower preponderance-of-the-evidence standard to plaintiff's motion to modify defendant's established custodial environment." *Id*. at 678. Because plaintiff's motion "sought to substantially modify the children's established custodial environment with defendant," and "had the effect of altering custody, . . . the clear-and-convincing-evidence standard of proof applied." *Id*. at 680. This Court cautioned the trial court to "apply the correct standard" on remand before making further changes. *Id*.

In October 2023, the case was reassigned to Judge Darlene A. O'Brien. In March 2024, plaintiff again moved for joint legal custody and a 50-50 split in parenting time. In April 2024, the trial court entered an order clarifying that defendant held sole legal custody of BK and SK based on this Court's decision in *Kuebler*. With respect to parenting time, the trial court continued the schedule that awarded plaintiff five overnights in a 14-day period during the school year and a 50-50 split of parenting time during the summers.

The trial court considered the admissible evidence presented at the evidentiary hearings before the July 2022 opinion and order was vacated and took supplemental testimony over the course of eight more evidentiary hearings. In October 2024, the trial court issued its ruling from the bench. It concluded that there was proper cause and change of circumstances to revisit the issues of custody and parenting time and found an established custodial environment with both parents. Applying a clear-and-convincing standard to plaintiff's request, the trial court ultimately concluded that plaintiff failed to meet her burden of proof to establish that the proposed change was in the children's best interests. It also determined that the parties were not able to communicate or cooperate to make decisions for the children. The court therefore denied

plaintiff's motion for joint legal custody and for a 50-50 split in parenting time, entering a corresponding order the same day. Plaintiff subsequently moved for reconsideration, which the trial court denied. This appeal ensued.

## II. STANDARDS OF REVIEW

As set forth in the Child Custody Act, MCL 722.21 *et seq*., this Court must affirm a child-custody order on appeal unless the trial court's factual findings were against the great weight of the evidence, the trial court committed a palpable abuse of discretion, or the trial court made a clear legal error on a major issue. See MCL 722.28; *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024). Under these three standards of review,

> (1) a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction, (2) an abuse of discretion occurs if the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias, and (3) clear legal error exists when a court incorrectly chooses, interprets, or applies the law. [*Id*. (quotation marks and citations omitted).]

A trial court's finding regarding the existence of an established custodial environment is a factual inquiry that this Court should affirm unless it is against the great weight of the evidence. *Safdar v Aziz*, 342 Mich App 165, 176; 992 NW2d 913 (2022). "Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion." *Brown v Brown*, 332 Mich App 1, 8; 955 NW2d 515 (2020). "This Court reviews the trial court's determination regarding a child's best interests for clear error." *Id*. at 8-9. "This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments." *Id*. at 9.

## III. ANALYSIS

Plaintiff argues that the trial court clearly erred by denying her motion for joint legal custody because it applied a clear-and-convincing standard of proof, despite finding that the proposed custody change would not alter the children's established custodial environment. We disagree.

"As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Kuebler*, 346 Mich App at 668 (quotation marks and citation omitted). The parties do not contest the trial court's finding that plaintiff established proper cause or change of circumstances to warrant review of its prior parenting-time and custody orders.

The Michigan Supreme Court recently reiterated the approach a trial court must take when considering a motion to change a custody or parenting-time order:

When considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child. In making this determination, it is the child's standpoint, rather than that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case. On the other hand, if the proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. [*Sabatine*, 513 Mich at 286 (quotation marks and citation omitted).]

Importantly, a trial court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." *Kuebler*, 346 Mich App at 669 (quotation marks and citation omitted).

In this case, after finding proper cause and a change of circumstances, the trial court carefully considered each of the best-interest factors under MCL 722.23, and determined that most of them favored defendant. The trial court then addressed whether the children had an established custodial environment, concluding that one existed with both parents because the children looked to plaintiff and defendant "for love, affection, parental comfort, and the necessities of life." Then, the trial court addressed whether the proposed custody change would modify the established custodial environment, stating:

Although [plaintiff's] proposed change of custody from sole legal with [defendant] to joint legal may not change this established custodial environment, it would, however, change custody, and thus would require clear and convincing evidence that it's in the children's best interests.

Based on this ruling, plaintiff maintains that because the trial court found the change of custody would not modify the established custodial environment, the court made a clear legal error by requiring plaintiff to meet a clear-and-convincing evidentiary standard, rather than a preponderance-of-the-evidence standard. We disagree with plaintiff's reading of the trial court's determination. Though perhaps expressed imprecisely, it appears the trial court was observing that while the children's *physical* custody may not be altered by the proposed change in *legal* custody, plaintiff's request nonetheless involved a change in custody, which required plaintiff to prove by clear and convincing evidence that the change was in the children's best interests. See *Barretta v Zhitkov*, 348 Mich App 539, 551-552; 19 NW3d 420 (2023) ("Physical custody pertains to where the child shall physically reside, whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare.") (quotation marks and citation omitted); see also, *Kuebler*, 346 Mich App at 670 (noting that "in matters affecting

custody, the movant must prove by clear and convincing evidence that the proposed change is in the child's best interests") (quotation marks and citation omitted).

Before determining the burden of proof, the trial court accurately recited the applicable standards, noting,

> If an established custodial environment exists, a change may be made only on clear and convincing evidence that the change is in the best interests of the child. If an established custodial environment does not exist, or if the proposed change will not alter the current established custodial environment, the lower burden of preponderance of the evidence applies.

The apparent misstatement by the trial court when it analyzed these principles does not undercut its conclusion that the clear-and-convincing standard applied. Notably, in *Kuebler*, 346 Mich App at 679, this Court concluded that "the trial court committed clear legal error by failing to apply a clear-and-convincing-evidence standard to plaintiff's motion to modify defendant's sole legal custody." This Court noted that plaintiff's request for joint legal custody and a 50-50 split in parenting time "had the effect of altering custody, and as a result, the clear-and-convincing-evidence standard of proof applied." *Id*. at 680. Plaintiff made an identical request in this case, moving for joint legal custody with defendant and a 50-50 split in parenting time. Given plaintiff's identical requests, it follows that she is again moving to "substantially modify the children's established custodial environment with defendant," which "ha[s] the effect of altering custody." *Id*.

We decline to disturb the trial court's ruling when it applied the correct evidentiary standard. To the extent that the court misstated the standard, the error was harmless. See MCR 2.613(A) (indicating that harmless error is not a ground for disturbing a judgment or order unless refusal to do so is inconsistent with substantial justice). Notably, "[u]nder the Child Custody Act, the overriding concern is the children's best interests." *Kuebler*, 346 Mich App at 668. Here, the trial court applied the correct evidentiary standard and rigorously analyzed the best-interest factors in this fact-intensive case. We find no clear legal error in the court's application of the Child Custody Act.

Plaintiff also argues that the trial court's finding, that the parties were unable to cooperate and agree concerning important decisions affecting the welfare of the children, was against the great weight of the evidence. Again, we disagree.

"Joint custody can refer to joint physical or joint legal custody. Joint legal custody, under MCL 722.26a, means that the parents shall share decision-making authority as to the important decisions affecting the welfare of the child." *Id*. at 691 (quotation marks and citations omitted). This Court has explained that when considering matters of joint custody, "the trial court shall determine whether joint custody is in the best interests of the children by considering the best-interest factors in MCL 722.23 and [w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." *Id*. at 692 (quotation marks and citation omitted; alteration in original). "In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to

cooperate with each other in joint decision-making." *Id*. at 691-692 (quotation marks and citation omitted).

The trial court's determination that the parties were unable to cooperate or generally agree on important decisions affecting the welfare of the children was not against the great weight of the evidence. In support of its finding, the trial court detailed several examples of the parties' inability to communicate regarding issues that touched on religious and educational concerns, the children's participation in day-to-day activities, and issues concerning the children's physical and mental welfare. The court also noted plaintiff's repeated failure to timely communicate with defendant through Our Family Wizard, despite being ordered to respond to messages within 48 hours. The trial court's findings were amply supported by the record.

Plaintiff's conduct demonstrated a fundamental disagreement with the children's involvement in school and church. Although plaintiff did not testify that she objected to the children attending church in Plymouth, she nearly always took the children to attend Sunday services elsewhere, despite claiming that she moved to Plymouth to be close to the children's church and school. Defendant testified that plaintiff seemed to react negatively to clubs, activities, sports, and other programs offered or held by the school and church. Evidence showed that plaintiff interfered with the children's interests in choir, altar service, cheerleading, basketball, volleyball, cross country, and American Heritage Girls by obstructing their participation while in her care. Evidence also showed that plaintiff did not ensure that the children completed their homework, did not regularly attend school events for parents, repeatedly caused the children to arrive late to school, and ignored information from the school.

The record also demonstrated that plaintiff's conduct interfered with the children's safety, health, and mental wellbeing. The trial court had to order plaintiff to accompany the children across a busy intersection on their way to and from school, or arrange for another competent adult to do so. Defendant also had to move the trial court to allow him to schedule orthodontic appointments for BK because of plaintiff's refusal to cooperate with the recommended treatment, which escalated to the point of causing the orthodontic practice to decline treatment to BK. Plaintiff also failed to pay an outstanding bill from the children's therapy office,[1] which prevented BK from receiving necessary therapy.

These issues—all related to the children's welfare—were matters that defendant tried to address with plaintiff through Our Family Wizard. However, plaintiff repeatedly violated the court order to answer messages within 48 hours, demonstrating a fundamental unwillingness to share decision-making authority with defendant. When plaintiff did reply, she repeatedly offered ambiguous, misleading, or plainly false responses to straightforward messages.

---

[1] The bill originated from plaintiff's decision to subpoena the children's counselor to appear and testify over Zoom but she left him in the online waiting room and never called him as a witness. Plaintiff did this despite both parents signing a contract stating they would not call the therapists as witnesses and neither parent would use information about the children's treatment in custody proceedings.

Because the evidence clearly preponderates in favor of the trial court's finding that the parties could not effectively communicate and make decisions in their children's best interests, the finding was not against the great weight of the evidence. To the extent that plaintiff contests defendant's testimony on these issues, "[t]his Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments." *Brown*, 332 Mich App at 9.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Sima G. Patel
/s/ Kathleen A. Feeney